Hilda A. GREEN

v.

George L. GREEN, Jr., et al.

No. 88–160–A.

Supreme Court of Rhode Island.

June 13, 1989.

Kenneth M. Beaver, Arcaro, Belilove & Kolodney, Providence, for plaintiff.

Thomas G. Hetherington, Hetherington & Hetherington, Pawtucket, Bruce E. Vealey, Bernstein & Vealey, Greenville, for defendants.

## OPINION

FAY, Chief Justice.

This case comes before the Supreme Court on the plaintiff's appeal from a Superior Court judgment denying her petition to recover assets distributed to the defendants upon the death of her husband. The trial justice held that the defendants were entitled to the funds of numerous trusts created by the decedent during his lifetime. We affirm that decision.

■ Initially we shall discuss our standard of review following the decision of a trial justice sitting without a jury. We have consistently held that the findings of a trial justice sitting without a jury are accorded great deference and will not be disturbed unless it is demonstrated that the trial justice misconceived or overlooked material evidence or was otherwise clearly wrong. *Oster v. Tellier*, 544 A.2d 128, 131

(R.I.1988); *Miller v. Dixon Industries Corp.*, 513 A.2d 597, 601 (R.I.1986); *Dickinson v. Killheffer*, 497 A.2d 307, 312 (R.I.1985). Furthermore, if findings of fact are supported by substantial evidence, we shall not substitute our decision for that of the trial justice. *Millerick v. Fascio*, 120 R.I. 9, 15, 384 A.2d 601, 604 (1978). Mindful of our standard of review, we set out the facts pertinent to this appeal as follows.

George L. Green (Green) died intestate on March 7, 1985, and was survived by his wife, Hilda A. Green, plaintiff, and three children from a prior marriage, George L. Green, Jr., Elizabeth A. Swope, and James D. Green, defendants. The plaintiff also has one daughter from a prior marriage.

Green and plaintiff were married in 1949. During the marriage both husband and wife worked to contribute financially to the marriage and also to the upkeep of various properties. The Greens owned some property jointly, and other property was recorded in Green's name alone. Green owned eight cottages on Cape Cod, which he rented to tourists. The plaintiff assisted Green by cleaning and preparing the cottages for the arrival of new guests. Green also owned a condominium in Florida, which was used by Green and plaintiff as a residential unit.

Green assumed responsibility for a majority of the couple's finances, including the purchase and sale of their real estate holdings. Whereas Green paid for the rent, heat, and food, plaintiff was responsible for the telephone bill, laundry bill, and various other miscellaneous bills. The plaintiff kept her own checking account, which she funded with money earned from employment outside the home. The funds in this account were used to buy goods for her daughter and herself.

Throughout the Greens' marriage Green maintained a strong relationship with his three children. Green's daughter, Elizabeth Swope (Swope), was exceptionally close to her father. Green enlisted Swope's aid in filing his tax returns, divulged the contents of his financial record book to Swope, which listed his holdings of

stock and trust accounts, and told her of his specific intention to avoid a will and probate. Green also informed Swope that the funds in each of his eight bank accounts were left in trust to be distributed upon his death to the named beneficiaries.

Upon Green's death, his Rhode Island estate-tax return revealed a gross estate of $258,125: $218,574 in eight separate bank accounts, $38,651 in securities, and $900 in personal property. Green had contributed all the money in each of the eight bank accounts, and each account was held in trust for one of his heirs. Green was named as trustee on all eight accounts, and he retained physical possession of the bankbooks throughout his life. Most of his stocks were also held jointly with one of the heirs. Because these assets were held either jointly or in trust, it was unnecessary for them to pass through probate as the remainder of the estate did.

The plaintiff's share of her late husband's estate comprised personal property (stocks) totaling $2,432 and, as the named beneficiary, the contents of two bank accounts totaling $25,000. The funds in the remaining bank accounts were distributed to the other named beneficiaries following Green's death, and the accounts were subsequently closed by each bank.

Thereafter, plaintiff filed a petition with the Pawtucket Probate Court. She requested a widow's allowance and also the recovery of all funds distributed to Green's three children pursuant to the trust accounts. The petition was denied, and plaintiff filed two appeals in the Superior Court, pursuant to G.L.1956 (1984 Reenactment) § 33–23–1. The plaintiff sought the overturn of the denial of a widow's allowance and a determination that the bank accounts were not valid trust accounts, thereby causing the estate to recover all funds formerly distributed.

The two appeals were consolidated and subsequently tried without a jury. The trial justice found that plaintiff was entitled to a widow's allowance totaling $10,-000, provided the estate had ample funds. This portion of the decision was not appealed.

Focusing on the trust accounts, the trial justice further noted that throughout the years activity on the trust accounts had been minimal. Although Green had made one withdrawal of approximately $2,000 and also reported all interest earned from said accounts on his tax returns, the trial justice determined that Green fully intended that upon his death the accounts were to be distributed to the named beneficiaries, including plaintiff. Furthermore, the trial justice noted that Green had told his daughter of his specific intent to avoid probate. The trial justice held that the trust accounts were valid totten trusts and as such the funds were properly distributed to each of the named beneficiaries. The plaintiff now appeals this portion of the trial justice's decision.

An initial examination of the law regarding totten trusts will be helpful to our analysis. A totten trust is defined as a deposit in trust by the settlor of his own money for the benefit of another. Black's Law Dictionary 1356 (West 5th ed.1979). The creation of a valid totten trust requires retention of the subject matter of the trust by the settlor or the trustee for the benefit of the named beneficiary. *Petition of Atkinson*, 16 R.I. 413, 415–16, 16 A. 712, 713 (1889). The settlor may be the named trustee, but this is not necessary to the validity of the trust.[1] Black's Law Dictionary 1356. During the settlor's lifetime the trust is revocable, and the settlor may use the funds for his own benefit. *Id.* Upon the settlor's death, however, the trust becomes irrevocable and is the exclusive property of the beneficiary. *Peoples Savings Bank v. Webb*, 21 R.I. 218, 42 A. 874 (1899).

■ For over one hundred years we have recognized that a totten trust is a valid tool for transferring assets upon the settlor's death. *See Slepkow v. McSoley*, 54 R.I. 210, 172 A. 328 (1934); *Petition of*

---

1. Although the settlor is not required to serve as trustee, in this case the decedent, Green, acted as both the settlor and the trustee.

*Atkinson,* 16 R.I. 413, 16 A. 712 (1889); *Ray v. Simmons,* 11 R.I. 266 (1875). In our line of cases interpreting totten trusts, we have distinguished a totten trust from a gift. *See Slepkow,* 54 R.I. at 213, 172 A. at 329; *Peoples Savings Bank,* 21 R.I. at 220, 42 A. at 874; *Atkinson,* 16 R.I. at 415, 16 A. at 713. The validity of a totten trust, unlike a gift, does not require delivery of the subject matter to the beneficiary. *Slepkow,* 54 R.I. at 213, 172 A. at 329; *Peoples Savings Bank,* 21 R.I. at 220, 42 A. at 874; *Atkinson,* 16 R.I. at 415, 16 A. at 713.

■ Because of the distinction between a trust and a gift, the settlor's intention is critical to the validity of a totten trust. The intention to create a trust must be shown by the settlor through a clear act and/or declaration and must be made during his lifetime. *Malley v. Malley,* 69 R.I. 407, 412, 34 A.2d 761, 763 (1943). The settlor is not required to use any particular form of words to create a trust but must convey the property to another in trust or unequivocally declare that he holds it in praesenti in trust or as trustee for another. *Ray,* 11 R.I. at 268.

■ In *Atkinson* we held that a valid trust was created when the settlor, after making a deposit in trust, communicated that fact to the beneficiary. However, actual notice to the beneficiary is not essential to the creation, existence, or validity of a trust. *Ray,* 11 R.I. at 268. Nor is an acceptance of or assent to a trust by the beneficiary necessary. *Tompkins v. Wheeler,* 41 U.S. (16 Pet.) 106, 10 L.Ed. 903 (1842). Finally, we have held that the creation of a valid totten trust is a question of intention and, therefore, a question of fact. *Peoples Savings Bank,* 21 R.I. at 222, 42 A. at 875.

■ The factfinder may look to the settlor's statements and conduct regarding the account in discerning the settlor's intent. *Malley,* 69 R.I. at 413, 34 A.2d at 763. The form of the account creates a rebuttable presumption that a valid trust exists for the named beneficiary. *Id.* at 412, 34 A.2d at 763. Merely making a deposit in trust for another, however, is not

conclusive evidence of the intent to create a trust. *Slepkow,* 54 R.I. at 213, 172 A. at 329. *See also Peoples Savings Bank,* 21 R.I. at 222, 42 A. at 875. Nevertheless, if the depositor dies before the beneficiary, leaving an unexplained bank account in the form of a trust and not revoking or disaffirming the trust during his lifetime, then a prima facie case supporting the creation of a valid trust exists. *Slepkow,* 54 R.I. at 213, 172 A. at 329.

Once the prima facie case is established, the burden of going forward shifts to the party opposing the trust. If that party presents satisfactory evidence to rebut the prima facie case, then the presumption of a valid trust becomes inoperative. The case will then proceed as if no presumption had been invoked. *See generally* Rules 302 and 303 of the Rhode Island Rules of Evidence (providing for presumptions regarding burden of producing evidence and stating when such presumptions will be applicable). However, if the prima facie case is not overcome by any reliable testimony and/or substantive evidence, then the trust will be upheld as valid. *See Slepkow,* 54 R.I. at 213, 172 A. at 329 (beneficiary entitled to bank account in trust because testimony presented failed to rebut presumption created by form of account).

■ Turning to the instant case, the principal issue is whether defendants are beneficially entitled to the sums of money in each account, which were placed on deposit by their father, Green. It is uncontradicted that all eight accounts were in the name of Green as trustee for each named beneficiary. We believe that Green specifically intended to dispose of his property through totten trusts. Therefore, the beneficiaries are entitled to the full amount of these trusts.

The trial justice ruled that the funds in the trust accounts are properly the funds of the beneficiaries named on each of the accounts. The trial justice stated that Green's intent—as shown by the form of the accounts as trusts, by the testimony that Green wanted to avoid probate, by the statements to Swope, and by the knowl-

edge of all the beneficiaries that they were to inherit from said accounts—was to form totten trusts. Relying upon this evidence, the trial justice determined that at the time of the creation of said accounts Green had established perfectly valid in praesenti trusts and the full effect of the trusts was to take place at the time of his death.

It is clear from Swope's testimony and Green's acts during his lifetime that he fully intended to dispose of his property through bank accounts naming his heirs as beneficiaries. After carefully reviewing the testimony and evidence entered below, we are of the opinion that the trial justice's findings regarding Green's intention and the validity of the totten trusts were not clearly wrong.

The form of the accounts at Green's death created a prima facie case that the accounts were totten trusts. The plaintiff argued that the presumption in favor of a valid trust disappears when any evidence is presented contrary to the prima facie case. The plaintiff presented as contradictory evidence testimony that all the beneficiaries did not know of the existence of the accounts during Green's lifetime, that at all times Green maintained control of the passbooks, and that he withdrew funds from one of the accounts. Although Green retained control of the passbooks, paid taxes on all interest accumulated, and withdrew approximately $2,000 from one of the accounts, his retention of control created valid revocable trusts during his lifetime. We are of the opinion that Green's control, disposition, and appropriation of the funds in the accounts does not invalidate the trusts or render them testamentary. Therefore, we find that plaintiff's evidence is insufficient to rebut the prima facie existence and validity of the accounts as totten trusts.

We also believe that the trial justice's findings of fact are supported by substantial evidence. In making these findings, the trial justice did not misconceive or overlook material evidence. Consequently we find that the trial justice did not err in determining that Green fully intended to create valid totten trust bank accounts dur-ing his lifetime. Furthermore, on the basis of this review, we hold that the funds in each account were properly distributed to the named beneficiary and should not revert back to the estate for distribution pursuant to our intestacy laws.

For the reasons stated, the plaintiff's appeal is hereby denied and dismissed. The judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court with our decision endorsed thereon.